TONI M. PARTINGTON, Petitioner-Appellant, *v.* THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES *et al.*, Defendants-Appellees.

Second District    No. 80-372

Opinion filed December 22, 1980.

Bruce P. Bower, of Prairie State Legal Services, Inc., and Barry R. Bruhn, of Ottawa, for appellant.

Tyrone C. Fahner, Attorney General, of Springfield (Jon E. Tweedt, Assistant Attorney General, of counsel), for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

This appeal poses a narrow issue, whether a natural parent who has validly consented to the adoption of her child may, prior to the specific placement of the child for adoption by others, properly petition to adopt as the "parent" of a "related child." Ill. Rev. Stat. 1979, ch. 40, par. 1501B, E.

Petitioner, Toni M. Partington, is the natural mother of the child sought to be adopted, Jennifer Partington, who was born June 17, 1976. On March 21, 1978, petitioner signed a document entitled "Final and Irrevocable Surrender to an Agency for Purposes of Adoption of a Born Child," in which she irrevocably surrendered all parental rights to Jennifer. On April 6, 1978, the court entered a dispositional order adjudging Jennifer dependent and continuing a representative of the defendant, Illinois Department of Children and Family Services (the Department), as guardian. On March 9, 1979, the court entered an order denying the mother's petition to rescind her consent. That same day the court also gave the Department the power to consent to the adoption of Jennifer.

On July 25, 1979, the petitioner filed a petition for adoption of Jennifer alleging, among other things, that the child was her natural daughter. The Department moved to dismiss the petition on the grounds

that petitioner is under a legal disability by virtue of the termination of her parental rights and could no longer claim a mother-daughter relationship for purposes of adoption. On January 23, 1980, the court granted the Department's motion, finding that the surrender of parental rights created a legal disability barring petitioner from seeking to adopt Jennifer as a related child. The court further denied petitioner's motion to vacate the dismissal order. The petitioner then moved for a permanent injunction enjoining the Department from consenting to the adoption of Jennifer, which the court granted pending the filing of a notice of appeal from its earlier rulings.

While the record does not indicate the actual custodial situation of Jennifer at the present time, the Department has advised in oral argument that the child is presently in a foster home.

The statute relating to adoption provides, as pertinent, that a "reputable person of legal age" who is under "no legal disability" may adopt a child. (Ill. Rev. Stat. 1979, ch. 40, par. 1502.) The statute defines a parent as "the father or mother of a legitimate or illegitimate child" (Ill. Rev. Stat. 1979, ch. 40, par. 1501E), and defines a "related child" as "a child subject to adoption where either or both of the adopting parents stands in any of the following relationships to the child by blood or marriage: parent, grand-parent, brother, sister, step-parent, step-grand-parent, step-brother, step-sister, uncle, aunt, great-uncle, great-aunt, or cousin of first degree; * * *." Ill. Rev. Stat. 1979, ch. 40, par. 1501B.

The Department argues that since the court's order of March 9, 1979, empowering it to consent to Jennifer's adoption, terminated petitioner's parental rights (see Ill. Rev. Stat. 1979, ch. 37, par. 705—9(2)), petitioner is no longer a "parent" within the meaning of the Adoption Act. The Department argues that allowing the related child petition by a natural parent whose rights have been terminated by consent would circumvent the statute which makes the surrender of children for adoption irrevocable except for fraud or duress. Ill. Rev. Stat. 1979, ch. 40, par. 1513.

The petitioner, however, contends that the statutory language compels the conclusion that she is a "parent" as defined in section 1B, E (par. 1501B, E) and thus that there is no statutory impediment to her petition for adoption in that role. She asserts that the termination of parental rights does not completely destroy the parent-child relationship (since, for example, adopted children can inherit from their natural parents); and that her petition is not an evasion of her prior surrender of the child since if the surrender were ineffective, no petition would have been necessary for her to regain custody. The precise question apparently has never been decided in Illinois.

The Department has limited the issue very narrowly. It does not contend that the petitioner may not seek to adopt her child following her

consent as any other interested person might petition. It contends only that she may not assume the "preferred" status of a "parent" of a "related child" after her parental rights have been terminated by her valid consent.

In this posture we are not persuaded that the legislature intended to indulge in the fiction that a biological parent is not related to her child because she has consented to its adoption. The language used in the Adoption Act does not require that interpretation. Petitioner clearly comes within the definition of a parent of a related child. If a parent whose legal rights have been terminated by her consent (see Ill. Rev. Stat. 1979, ch. 40, par. 1521) was thereby intended to cease to be a "parent" the legislature could have said so. It did so provide in section 1—14 of the Juvenile Court Act by specifically excluding from the definition of parents in that section, "a parent whose rights * * * have been terminated in any manner provided by law." (Ill. Rev. Stat. 1979, ch. 37, par. 701—14.) It is of some significance that the definitions of parent in both the Adoption Act and the Juvenile Court Act were both amended into their present form effective October 1, 1973, to include the father as well as the mother of the illegitimate child following a decision of the United States Supreme Court. However, the contemporaneous amendments preserve the difference in language, thus providing some evidence that the legislature was aware of the varying definitions and chose not to exclude parents whose rights were terminated from those treated as parents in the Adoption Act.

The Department has argued that the purpose of the consent is to add stability and certainty to adoption proceedings. (See *Regenold v. Baby Fold, Inc.* (1977), 68 Ill. 2d 419, 432.) We do not disagree with this argument. However, we fail to see how the need for stability in adoption proceedings is thwarted by permitting the parent to petition before the child is placed for adoption (*Cf. In re Workman* (1978), 56 Ill. App. 3d 1007, 1016 (Alloy, J., concurring in part and dissenting in part), *aff'd on other grounds in In re Workman* (1979), 76 Ill. 2d 256, 259.) The inquiry in the adoption proceedings will continue to encompass the best interests of the child. The circumstance that the mother has previously consented to the adoption would, of course, be a factor which would have to be heavily weighed by the court in the adoption proceedings. In our view, this argument does not negate the statute, which refers to a parent in biological terms without qualifications.

The Department's position is based more upon form than upon substance. The "termination" of the parent's right by her giving consent to an adoption should not prevent the parent from seeking to establish new rights by independent adoption proceedings so long as there has not been an intervening placement for adoption. This court has recognized that, as a general proposition, where a parental right had been terminated by law

the parent may not forever be precluded from gaining new rights by following prescribed procedures. (*In re Konczak* (1977), 55 Ill. App. 3d 217.) In *Konczak*, the natural parents were divorced and the child was adopted by the natural father and his new wife. The child was later found in need of supervision, made a ward of the court, and placed in foster care. The natural mother then petitioned for custody of the child pursuant to the Juvenile Court Act and was granted custody. The adoptive parents asserted on appeal that the natural mother's rights were terminated by the adoption and thus that she could not petition for custody. We rejected the standing argument, noting that "any person interested in the minor" may petition for change of custody. (Ill. Rev. Stat. 1979, ch. 37, par. 705—8(3).) While the Adoption Act was not involved, the fact that the mother's legal rights were terminated by the intervening adoption did not preclude her later claim for custody. See also *Thompson v. Department of Health & Rehabilitative Services* (Fla. App. 1977), 353 So.2d 197, 198.

In the intervening period, given the Department's concession that it does not urge that the mother is prevented from petitioning for adoption as any stranger, the only question is whether she may have the more "preferred" status of a "parent" of a "related child." We note, however, that under all the circumstances the difference in status is not of great practical significance. There are two important differences in the hearing of petitions to adopt a related child as opposed to all other adoption proceedings. In a related child petition, the petitioner need not allege that the guardian (in this case the Department) has consented to the adoption. (Ill. Rev. Stat. 1979, ch. 40, par. 1507(C).) Also, a social investigation is discretionary for related child adoptions, but mandatory for all other adoptions. (Ill. Rev. Stat. 1979, ch. 40, par. 1508.) But in the unique circumstances of this case, the proper exercise of judicial discretion would dictate that a social investigation be ordered to determine whether the best interests of the child would be served by allowing the adoption. The fact that formal consent of the Department may not be required is not an overriding consideration. The Department could, of course, be a party to the adoption proceedings. And even if this were an unrelated adoption, the court would be able to consider whether the consent had been arbitrarily withheld. *Stines v. Vaughn* (1974), 23 Ill. App. 3d 511, 518-19.

We therefore reverse the judgment which dismissed the petition for adoption by the petitioner and remand the cause to the trial court with directions to reinstate the petition for adoption and to thereafter proceed consistent with this opinion.

Reversed and remanded with directions.

NASH and UNVERZAGT, JJ., concur.