In re CUSTODY OF MARIA ATHERTON, a Minor.—(VIVIAN WITTIG *et al.*, Petitioners-Appellants, *v.* PATRICIA ATHERTON *et al.*, Respondents-Appellees.)

First District (1st Division)    No. 81-2711

Opinion filed June 28, 1982.

Charles Locker, of Chicago, for appellants.

Alan P. Sobel, of Chicago, for appellees.

JUSTICE GOLDBERG delivered the opinion of the court:

Vivian and John Wittig (petitioners) filed a "petition for custody and other relief" against Patricia and Roger Atherton (respondents) seeking temporary custody, temporary visitation, and a declaratory judgment for permanent custody and adoption of Maria Atherton, a minor child. The trial court granted the respondents' motion to dismiss. Petitioners appeal.

"On motion to dismiss we accept as true all well-pleaded facts." (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 329, 371 N.E.2d 634.) On September 17, 1976, Vivian Wittig (then Vivian Matheny) gave birth to a daughter, Maria. Vivian and her husband were subsequently divorced. Vivian retained custody of Maria. On October 7, 1977, Vivian consented to adoption of Maria by respondents. (Ill. Rev. Stat. 1977, ch. 40, par. 1512.) Judgment for adoption was entered on December 15, 1978. Vivian subsequently married petitioner John Wittig.

In January 1981, respondents contacted petitioners and informed them Roger Atherton was ill. Respondents stated they could no longer care for Maria. Pursuant to mutual consent, Maria visited with petitioners and went to live with them as of February 6, 1981. Petitioners stated respondents agreed to permit petitioners to adopt Maria.

In "late June, 1981," respondents informed petitioners they wished Maria returned to them. The parties subsequently entered into a "Memorandum of Agreement" on July 13, 1981. This document, a copy of which was attached to the petition, provided Maria would return to the home of respondents for a period of time and would then go to the home of petitioners for "visitation." The document provided the parties would resume "negotiating" the subject of Maria's custody. Maria went to live with respondents.

On August 6, 1981, respondents informed petitioners by letter respondents expressly repudiated the terms of the agreement and withdrew any consent allowing contact between petitioners and Maria.

In their petition, petitioners requested the trial court to place Maria in their temporary custody according to the provisions of the memorandum between the parties. Count II of the petition sought temporary visitation

rights. Count III requested a declaratory judgment the respondents must comply with the memorandum.

In this court, petitioners contend the trial court improperly dismissed their petition. Petitioners contend the trial court should have given effect to the memorandum agreement executed between the parties.

Adoption procedures are purely statutory in Illinois. The right of adoption "was unknown at common law * * *." (*Ekendahl v. Svolos* (1944), 388 Ill. 412, 414, 58 N.E.2d 585.) It is undisputed petitioner Vivian Wittig formally placed her daughter Maria for adoption in October 1977. Also, she executed the requisite consent documents. (Ill. Rev. Stat. 1979, ch. 40, par. 1512.) Under the law of Illinois this consent to adoption is "irrevocable unless it shall have been obtained by fraud or duress * * *." Ill. Rev. Stat. 1979, ch. 40, par. 1513.

The record shows that on October 7, 1977, in adoption proceedings, the circuit court entered an order terminating the parental rights of the natural parents. On December 15, 1978, a formal judgment for adoption of Maria Atherton by the respondents was entered. Section 17 of the Adoption Act provides (Ill. Rev. Stat. 1979, ch. 40, par. 1521):

> "After the entry either of an order terminating parental rights or the entry of an order of adoption, the natural parents of a child sought to be adopted shall be relieved of all parental responsibility for such child and shall be deprived of all legal rights as respects the child, * * *."

■■ Therefore, we are impelled first to reject petitioners' contention this case involves the child custody provisions of section 601 *et seq.* of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 601 *et seq.*). Custody and adoption proceedings are distinguishable in that "adoption severs the rights and interests of natural parents; it permanently terminates the relation between parent and child." *In re Jones* (1975), 34 Ill. App. 3d 603, 607, 340 N.E.2d 269.

Notwithstanding the formal adoption of Maria by respondents, petitioners contend the memorandum agreement between the parties should be enforced. Petitioners stress the general maxims of equity and the constitutional provision of a "remedy in the laws for all injuries and wrongs" (Ill. Const. 1970, art. I, §12) should permit the court to give effect to this document.

We find *Willey v. Lawton* (1956), 8 Ill. App. 2d 344, 132 N.E.2d 34, instructive here. There, the natural mother and father of two minor children were divorced. The mother, who was custodial parent of the children, and her second husband (the plaintiffs) entered into an oral agreement whereby the natural father would pay them $3,000 in cash and a note for $2,000. The natural mother and her husband agreed, in turn, to adopt the children in order to relieve the natural father of future child

support payments. The father defaulted on the note and the plaintiffs brought suit. In finding the obligation of the father void, this court stated (8 Ill. App. 2d 344, 346-47):

> "The sole justification for this disruption of the family relation and the termination of the natural association between parent and child, is the welfare of the child. It is not enough that the adopting parents are willing to assume the obligations to the child imposed by the adoption act and that the parents are willing that the child be adopted. The court must find that the welfare of the child will be promoted by the change in its status to an adopted child. The agreement between the natural parent and adopting parents whereby the latter for a consideration payable to them agree to adopt a child or children of the natural parent, is contrary to the public policy and therefore void. We have been referred to no case where the validity of a contract similar to the one before us was determined. In Hooks v. Bridgewater, 111 Tex. 122, where the father delivered his child to a third person on a promise of the latter to leave his property to the child, the court said:
>
>> 'The law should not encourage the relinquishment by parents of their children and the renunciation of a sacred relation imposed by nature merely for the children's enrichment by placing the seal of validity upon a contract in which a parent in effect barters his child away for a property return. It is more concerned in fostering and maintaining that relation and guarding its valuable and wholesome influences than in promoting the child's financial prosperity. Let it be once held that a parent's contract of this kind is valid and may be enforced, and every parent will be free to transfer his children to any one willing to pay them well for the bargain. We are unwilling to subscribe to such a doctrine. It tends to the destruction of one of the finest relations of human life. . . .'
>
> Plaintiffs object that this statement was obiter dicta. If so, it states a principle which is sound and should prevail. The same principle was stated in Parks v. Parks, 209 Ky. 127, 132, where the court said, 'Infant children are neither parties nor privies nor the subject of barter.'
>
> In principle the present contract is similar to contracts to get or permit a divorce. Authorities need not be cited to establish the fact that such contracts are against public policy and void."

■■ We find the principles expressed in *Willey* directly applicable to the facts before us. Here, the parties have attempted to alter the custody of the child by means of an agreement among themselves. Its ultimate effect

was to bypass the custody decisions of the court, notwithstanding the previous termination of all parental rights of the natural parents. The purpose of formal statutory requirements in adoption cases "is to add stability and certainty to adoption proceeding." (*Regenold v. Baby Fold, Inc.* (1977), 68 Ill. 2d 419, 432, 369 N.E.2d 858.) Thus, such determinations cannot be circumvented by an alleged agreement without judicial sanction.

The cases principally relied upon by plaintiffs are distinguishable. The sole issue before the court in *Partington v. Department of Children & Family Services* (1980), 91 Ill. App. 3d 205, 414 N.E.2d 540, was whether a natural parent who had consented to the adoption of a child could petition the court to adopt the child herself before the child had been adopted by others. Here, Maria Atherton had been formally adopted several years before the events which led up to this case. Plaintiffs also cite *Monahan v. Monahan* (1958), 14 Ill. 2d 449, 153 N.E.2d 1, and *Weiss v. Beck* (1953), 1 Ill. 2d 420, 115 N.E.2d 768. These cases, however, dealt with the question of equitable adoption where no formal adoption had been performed. They are far different from the facts before us. We also find no relation between the facts before us and those cases cited by plaintiff dealing with subject matter jurisdiction of child-support orders. *Zalduendo v. Zalduendo* (1977), 45 Ill. App. 3d 849, 360 N.E.2d 386, *appeal denied* (1977), 66 Ill. 2d 628; *Parker v. Parker* (1948), 335 Ill. App. 293, 81 N.E.2d 745, *appeal denied* (1949), 401 Ill. 631.

We wish to emphasize our decision here is based solely upon the inability of this court to give effect to the alleged agreement between the parties. The status of minors as wards of the court stands strongly upon ancient legal principles. (See *In re Support of Bayuk* (1979), 79 Ill. App. 3d 877, 881, 398 N.E.2d 1109, and the authorities there cited.) If this court were to give effect to the agreement here involved, the plenary jurisdiction of the court over the minor child would be destroyed. Our inability to enforce this agreement does not, however, forever preclude the natural mother from acting within the powers of the court in order to reestablish her rights as to Maria. We hold only that no party may usurp the powers of the court by private agreement. We therefore affirm the judgment without prejudice to such proper legal action as the parties may wish to institute.

Judgment affirmed.

CAMPBELL, P. J., and O'CONNOR, J., concur.