691 N.E.2d 123 (1998)
294 Ill. App.3d 720
229 Ill.Dec. 187
In re MARRIAGE OF James R. BONNEAU, Petitioner-Appellant, and
Donna Marie Bonneau, n/k/a/ Donna Marie Tastad, Respondent-Appellee.
No. 2-97-0259.
Appellate Court of Illinois, Second District.
February 9, 1998.
*126 Alan H. Cooper, Rochelle, for James R. Bonneau.
William P. Fearer, II, Steven C. Ames, Fearer, Nye, Ahlberg & Chadwick, Oregon, for Donna Marie Bonneau.
Justice COLWELL delivered the opinion of the court:
During the property distribution phase of her marriage dissolution (750 ILCS 5/101 et seq. (West 1996)), respondent, Donna Marie Bonneau, sought the production of certain medical records from petitioner, James R. Bonneau, relating to petitioner's possible testing for, or infection with, the human immunodeficiency virus (HIV), a causative agent of acquired immunodeficiency syndrome (AIDS). Petitioner refused to produce the requested records, despite a trial court order to the contrary, arguing that the records were protected from disclosure under the privilege established in the AIDS Confidentiality Act (Act) (410 ILCS 305/1 et seq. (West 1996)). As a result, the circuit court of Ogle County found petitioner in indirect civil contempt for failure to comply with the court's discovery order, fined him $250, and ordered him to pay $250 for respondent's attorney fees. Petitioner appealed the court's contempt order.

FACTS
After more than 12 years of marriage, petitioner filed a petition for dissolution of marriage on February 22, 1995. On May 23, 1995, the trial court entered a judgment for dissolution, reserving questions of maintenance and property distribution.
On July 8, 1996, respondent filed a motion to produce medical records alleging that "on information and belief, [petitioner] was recently hospitalized for an immune system disorder (blood disease and pneumonia)." Respondent then requested petitioner's medical records for "a condition, which may be AIDS or AIDS related."
The trial court eventually granted respondent's motion and ordered petitioner to produce either his medical records or a narrative *127 report from his treating physician. The trial court found that petitioner waived his protections under the Act by instituting the dissolution proceeding, since the court was required to consider the parties' health in determining the distribution of property and the award of maintenance.
The trial court thereafter denied petitioner's motion for reconsideration. Nonetheless, petitioner indicated that he would not produce his medical records or a narrative report. Respondent subsequently filed a petition for adjudication of direct civil contempt. The trial court found petitioner in indirect civil contempt, fined him, and ordered him to pay respondent's attorney fees. Petitioner then filed a timely notice of appeal.

STANDARD OF REVIEW
A trial court is vested with the inherent power to enforce its orders and preserve its dignity by the use of contempt proceedings (People v. Warren, 173 Ill.2d 348, 368, 219 Ill.Dec. 533, 671 N.E.2d 700 (1996)), and a trial court may use contempt proceedings to compel a party to obey a discovery order (166 Ill.2d R. 219(c); In re Marriage of Daniels, 240 Ill.App.3d 314, 323, 180 Ill.Dec. 742, 607 N.E.2d 1255 (1992)). A contempt proceeding is also an appropriate method for testing the correctness of a discovery order. Flannery v. Lin, 176 Ill. App.3d 652, 655, 126 Ill.Dec. 108, 531 N.E.2d 403 (1988).
Where an individual appeals a contempt judgment imposed for violating a discovery order, that discovery order is also subject to review. Almgren v. Rush-Presbyterian-St. Luke's Medical Center, 162 Ill.2d 205, 216, 205 Ill.Dec. 147, 642 N.E.2d 1264 (1994). Thus, where the trial court's discovery order is invalid, a contempt judgment for failure to comply with the discovery order must be reversed. Lin, 176 Ill.App.3d at 655, 126 Ill.Dec. 108, 531 N.E.2d 403.
Since we are reviewing a discovery order, respondent contends that the standard of review is abuse of discretion. See Maxwell v. Hobart Corp., 216 Ill.App.3d 108, 110, 159 Ill.Dec. 599, 576 N.E.2d 268 (1991) (rulings on discovery matters will not be disturbed on appeal absent a manifest abuse of discretion). Regardless, a trial court lacks the discretion to compel the disclosure of information that is privileged or otherwise exempted by statute or by common law. Daniels, 240 Ill.App.3d at 324, 180 Ill.Dec. 742, 607 N.E.2d 1255. Moreover, where the facts are uncontroverted and the issue is the trial court's application of the law to the facts, as in this case, a court of review may determine the correctness of the ruling independently of the trial court's judgment. First National Bank v. Strong, 278 Ill. App.3d 762, 764, 215 Ill.Dec. 421, 663 N.E.2d 432 (1996). Accordingly, our review in this matter is de novo. Strong, 278 Ill.App.3d at 764, 215 Ill.Dec. 421, 663 N.E.2d 432; cf. D.C. v. S.A., 178 Ill.2d 551, 559, 227 Ill.Dec. 550, 687 N.E.2d 1032 (1997)(applicability of a statutory discovery privilege is a matter of law).

ANALYSIS
On appeal, petitioner contends that, since the requested records are privileged under the Act, the trial court erroneously found him in contempt. In response, relying on the common law, respondent argues that petitioner waived the Act's privilege by putting his health in issue.

I. INTRODUCTION
The number and variety of HIV-related cases have grown in Illinois and across the country. See, e.g., Advincula v. United Blood Services, 176 Ill.2d 1, 223 Ill.Dec. 1, 678 N.E.2d 1009 (1996) (blood transfusion-liability case); People v. Russell, 158 Ill.2d 23, 196 Ill.Dec. 629, 630 N.E.2d 794 (1994) (criminal transmission case); Doe v. Northwestern University, 289 Ill.App.3d 39, 224 Ill.Dec. 584, 682 N.E.2d 145 (1997) (personal injury claims within "fear of AIDS" case), appeal allowed, 175 Ill.2d 525, 228 Ill.Dec. 717, 689 N.E.2d 1138; Doe v. Surgicare of Joliet, Inc., 268 Ill.App.3d 793, 205 Ill.Dec. 593, 643 N.E.2d 1200 (1994) ("fear of AIDS" case). See generally Annotation, State Statutes or Regulations Expressly Governing Disclosure of Fact that Person has Tested Positive for Human Immunodeficiency Virus *128 (HIV) or Acquired Immunodeficiency Syndrome (AIDS), 12 A.L.R. 5th 149 (1993). Contemporaneously, the number and variety of discovery disputes involving HIV-related information has risen. See generally U. Colella, HIV-Related Information and the Tension Between Confidentiality and Liberal DiscoveryThe Need for a Uniform Approach, 16 J. Legal Med. 33 (1995).
To resolve these discovery disputes, courts must strike the proper balance between competing interests: liberal discovery, public health, and an individual's right to privacy. On the one hand, our society favors and needs liberal discovery. See 166 Ill.2d R. 201(b)(1) (parties may obtain full disclosure regarding any relevant matter); Wardius v. Oregon, 412 U.S. 470, 473, 93 S.Ct. 2208, 2211, 37 L.Ed.2d 82, 87 (1973) (pointing out, in a criminal case, the ends of justice are best served by liberal discovery); Winfrey v. Chicago Park District, 274 Ill.App.3d 939, 949, 211 Ill.Dec. 46, 654 N.E.2d 508 (1995) (noting Illinois Supreme Court rules permit liberal discovery); see also Mistler v. Mancini, 111 Ill.App.3d 228, 231-32, 67 Ill.Dec. 1, 443 N.E.2d 1125 (1982) (listing objectives of discovery: enhance the truth-seeking process; enable attorneys to better prepare and evaluate their cases; eliminate surprises; and ensure that judgments rest upon the merits of the case). Consequently, pretrial discovery presupposes a range of relevance and materiality that includes not only what is admissible at trial but also that which leads to what is admissible at trial. Mistler, 111 Ill.App.3d at 232, 67 Ill.Dec. 1, 443 N.E.2d 1125.
Our need for liberal discovery, however, clashes with our society's need to keep certain matters confidential, through evidentiary privileges, to protect the public health. See D.C. v. S.A., 283 Ill.App.3d 693, 700, 219 Ill.Dec. 248, 670 N.E.2d 1136 (1996) (our legislature has the power, through the enactment of evidentiary privileges, to inhibit the truth-seeking process to protect certain relationships), rev'd on other grounds, 178 Ill.2d 551, 227 Ill.Dec. 550, 687 N.E.2d 1032 (1997); FMC Corp. v. Liberty Mutual Insurance Co., 236 Ill.App.3d 355, 358, 177 Ill.Dec. 646, 603 N.E.2d 716 (1992) (privileges are designed to protect interests outside the truth-seeking process); see, e.g., 735 ILCS 5/8-802 (West 1996) (physician/patient privilege); 740 ILCS 110/1 et seq. (West 1996) (Mental Health and Developmental Disabilities Confidentiality Act). In particular, in this case, our legislature enacted the Act, with its assurance of confidentiality, to control the spread of HIV by encouraging the public to submit to voluntary testing. In re Application of Multimedia KSDK, Inc., 221 Ill.App.3d 199, 202, 163 Ill.Dec. 757, 581 N.E.2d 911 (1991).
Our legislature found that confidential HIV testing is a valuable tool in protecting the public health. 410 ILCS 305/2(1), (3) (West 1996). Nonetheless, prior to the Act's enactment, members of the public were deterred from seeking HIV testing in part because they feared that their results would be disclosed without their consent. 410 ILCS 305/2(2) (West 1996). The public's fear was well-founded, since individuals with HIV and those associated with individuals with HIV have suffered violence and discrimination in housing, medical care, employment, insurance, and education affecting their reputations, economic livelihoods, and personal relationships. 16 J. Legal Med. at 34, 58. However, through confidential testing, the state is able to encourage individuals to submit voluntarily to HIV tests, enabling the state to educate those who have tested positive to act responsibly and refrain from spreading the disease. 16 J. Legal Med. at 74-75.
Moreover, courts must also consider a party's constitutional right to privacy (U.S. Const., amend. IV; Ill. Const.1970, art. I, § 6 ("[t]he people shall have the right to be secure * * * against * * * invasions of privacy"); Griswold v. Connecticut, 381 U.S. 479, 484, 85 S.Ct. 1678, 1681-82, 14 L.Ed.2d 510, 514-15 (1965) (individuals enjoy a constitutional right to privacy)), including the constitutional protection against the unwarranted disclosure of "personal matters" (Whalen v. Roe, 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64, 73 (1977); Family Life League v. Department of Public Aid, 132 Ill.App.3d 929, 932, 88 Ill.Dec. 117, 478 N.E.2d 432 (1985) (privacy rights involve one's interest in avoiding the disclosure of personal matters)). One constitutional scholar *129 has gone so far as to state: "`[AIDS] has created the most controversial context in which the right of record privacy arises today.'" 16 J. Legal Med. at 57, quoting L. Tribe, American Constitutional Law 1394 (2d ed.1988). It is in light of these competing interests that we reach our decision in this matter.

II. APPLICABLE VERSION OF ACT
Section 9 of the Act provides:
"No person may disclose or be compelled to disclose the identity of any person upon whom a test is performed, or the results of such a test in a manner which permits identification of the subject of the test * * *." 410 ILCS 305/9 (West 1996).
The Act's definition of a "person" includes a "natural person" (410 ILCS 305/3(h) (West 1996)), and the Act defines a "test" as "a test to determine the presence of the antibody or antigen to HIV, or of HIV infection" (410 ILCS 305/3(g) (West 1996)). Accordingly, petitioner's medical records concerning his HIV-related information are protected by the Act, and none of the Act's exceptions apply.
The parties, however, disagree over which version of the Act is applicable. Respondent contends that the former version of the Act, containing a section 9(g) exception, is applicable while petitioner contends that the current version of the Act, without the section 9(g) exception, is applicable. We note that respondent's motion never relied on, or even raised, the section 9(g) exception. Regardless, on the merits, we agree with petitioner.
Prior to August 18, 1995, section 9(g) provided an exception to the Act's confidentiality for "[a] person allowed access to said record by a court order which is issued in compliance with the following provisions." 410 ILCS 305/9(g) (West 1994). Among other changes, Public Act 89-381 amended section 9(g) by removing the exception and by leaving it blank. Pub. Act 89-381, eff. August 18, 1995 (amending 410 ILCS 305/9(g) (West 1994)); see 410 ILCS 305/9(g) (West 1996).
When determining whether a statutory amendment applies to an existing controversy on appeal, a reviewing court should apply the law as it exists at the time of the appeal, unless the application of the change in the law would affect a vested right. First of America Trust Co. v. Armstead, 171 Ill.2d 282, 288-89, 215 Ill.Dec. 639, 664 N.E.2d 36 (1996). Where no vested rights are involved, either because they are not yet perfected or because the amendment is procedural in nature, the amendment can be applied to the existing controversy without any retroactive impact. Armstead, 171 Ill.2d at 290, 215 Ill.Dec. 639, 664 N.E.2d 36.
In this case, respondent filed her motion to produce on July 8, 1996, while the legislature repealed section 9(g) effective August 18, 1995. Since the legislature has an ongoing right to amend a statute (Armstead, 171 Ill.2d at 291, 215 Ill.Dec. 639, 664 N.E.2d 36), respondent possessed no vested right in the mere continuance of section 9(g). In addition, respondent could not have reasonably relied on section 9(g). See Valdez v. Zollar, 281 Ill.App.3d 329, 333, 216 Ill.Dec. 500, 665 N.E.2d 560 (1996) (a major factor must be the reasonable reliance that the expectation induces).
Respondent argues, however, that her right to access petitioner's medical records regarding his HIV-related information arose prior to the effective date of Public Act 89-381, either when petitioner filed the petition for dissolution, respondent answered the petition, or the trial court entered the judgment for dissolution. Respondent, however, never perfected her rights under former section 9(g) because she did not file her motion until after section 9(g) was amended. Compare Armstead, 171 Ill.2d at 293, 215 Ill.Dec. 639, 664 N.E.2d 36 (finding no vested rights in registering petroleum tanks and receiving compensation under a prior version of the Gasoline Storage Act (415 ILCS 5/22.18b (West 1992)) where the "[p]laintiff had not satisfied the statutory prerequisites so as to create a reasonable expectation of reimbursement * * * prior to the amendment"), with Harraz v. Snyder, 283 Ill.App.3d 254, 218 Ill.Dec. 590, 669 N.E.2d 911 (1996) (finding a vested right where plaintiff did all she could to perfect her interest in being compensated for her claims, since her injury had occurred and she had filed her original complaint before *130 the effective date of the statute), and Hernandez v. Woodbridge Nursing Home, 287 Ill.App.3d 641, 222 Ill.Dec. 916, 678 N.E.2d 788 (1997) (finding a vested right in claiming treble damages where the plaintiff's cause of action accrued and she filed her complaint before the statutory amendment). Because no vested right was involved, the current version of the Act, without the section 9(g) exception, is applicable here.

III. WAIVER
Despite the Act's protection, respondent argues that she is entitled to petitioner's HIV-related information. Relying on the common law, respondent contends petitioner waived the Act's privilege by putting his health in issue.

A. AVAILABILITY OF COMMONLAW
Before we address whether petitioner put his health in issue, we must first address whether respondent's common-law argument is available or whether the Act abrogates the common law. Petitioner correctly argues that one rule of statutory construction is that the expression of certain exceptions in a statute will be construed as an exclusion of all others (see Weast Construction Co. v. Industrial Comm'n, 102 Ill.2d 337, 340, 80 Ill.Dec. 763, 466 N.E.2d 215 (1984)), and in this case, the Act does not contain an exception for situations when a party's health is in issue. Compare 410 ILCS 305/9(a) through (k) (West 1996) with 740 ILCS 110/10(a)(1) (West 1996) (exception to privilege in Mental Health and Developmental Disabilities Confidentiality Act where recipient introduces mental condition as element of claim or defense) and 735 ILCS 5/8-802 (West 1996) (exception to physician/patient privilege where patient's physical or mental condition is an issue). Consequently, the Act does not provide for respondent's common-law waiver argument.
A statute alleged to be in derogation of the common law, however, should not be construed as changing the common law beyond what is expressed by the words in the statute or is necessarily implied from it. People v. Haywood, 118 Ill.2d 263, 272, 113 Ill.Dec. 236, 515 N.E.2d 45 (1987). In addition, statutes in derogation of the common law are strictly construed in favor of persons sought to be subjected to their operation, and courts will read nothing into such statutes by intendment or implication. O'Neill v. Brown, 242 Ill.App.3d 334, 339, 182 Ill.Dec. 301, 609 N.E.2d 835 (1993). Furthermore, the common law is part of the law of Illinois unless it has been expressly abrogated by statute. People ex rel. Board of Trustees of the University of Illinois v. Barrett, 382 Ill. 321, 346, 46 N.E.2d 951 (1943). The Act does not expressly abrogate the "in issue" waiver argument, and we will not read such an abrogation into the Act. As a result, respondent's common-law waiver argument is available.

B. HEALTH IN ISSUE
The question then is whether petitioner put his physical health in issue. Respondent claims petitioner put his physical health in issue by filing the petition for dissolution and by requesting an equal distribution of the marital assets. Respondent further contends that petitioner's physical health is relevant because (1) petitioner seeks part of respondent's personal injury claim, and (2) the parties' pensions would be difficult to value accurately without knowing whether the parties have normal life expectancies.
Although this issue has not arisen within the context of the Act's statutory privilege, we are guided by the case law addressing this issue within the context of other statutory privileges. A statutory privilege regarding mental or physical health should not be deemed waived unless the party asserting the privilege either expressly waived the privilege or specifically or affirmatively placed his or her mental or physical health in issue in the pleadings. See Bland v. Department of Children & Family Services, 141 Ill.App.3d 818, 826-27, 96 Ill.Dec. 122, 490 N.E.2d 1327 (1986); Tylitzki v. Triple X Service, Inc., 126 Ill.App.2d 144, 151, 261 N.E.2d 533 (1970); Webb v. Quincy City Lines, Inc., 73 Ill.App.2d 405, 408-09, 219 N.E.2d 165 (1966). Courts should be wary to find that a party waived a statutory privilege by placing his or her physical or mental *131 health in issue. To disregard lightly these statutory privileges would open a Pandora's box of inquiry into a party's physical or mental health, even when only peripherally involved in the proceeding, and would necessitate time-consuming excursions into speculation and irrelevant side shows. See Thiele v. Ortiz, 165 Ill.App.3d 983, 993, 117 Ill.Dec. 530, 520 N.E.2d 881 (1988); Webb, 73 Ill. App.2d at 409, 219 N.E.2d 165. Confidentiality privileges are too important to be brushed aside. Thiele, 165 Ill.App.3d at 993, 117 Ill.Dec. 530, 520 N.E.2d 881; Bland, 141 Ill.App.3d at 826, 96 Ill.Dec. 122, 490 N.E.2d 1327; Tylitzki, 126 Ill.App.2d at 149, 261 N.E.2d 533. Furthermore, it is not difficult to consider the many ways in which it could be argued that a party's physical or mental health is in issue, and soon there would exist more exceptions to the statutory privileges than there would be areas of inquiry protected by the privileges. Thiele, 165 Ill.App.3d at 993, 117 Ill.Dec. 530, 520 N.E.2d 881; Bland, 141 Ill.App.3d at 826, 96 Ill.Dec. 122, 490 N.E.2d 1327; Tylitzki, 126 Ill.App.2d at 149, 261 N.E.2d 533.
In Goldberg v. Davis, 151 Ill.2d 267, 176 Ill.Dec. 866, 602 N.E.2d 812 (1992), the court found that the complainant's mental condition was in issue in a license disciplinary proceeding brought against the plaintiff before the Illinois Department of Professional Regulation (the Department). The Department accused the plaintiff of improperly treating the complainant and found that the plaintiff's diagnosis of the complainant was a crucial element of the Department's complaint in determining whether the treatment was proper. Cf. SPSS, Inc. v. Carnahan-Walsh, 267 Ill.App.3d 586, 204 Ill.Dec. 554, 641 N.E.2d 984 (1994) (communications with an attorney are in issue when a party files a malpractice claim against the attorney); People v. O'Banner, 215 Ill.App.3d 778, 159 Ill. Dec. 201, 575 N.E.2d 1261 (1991) (communications with an attorney are put in issue when a criminal defendant asserts ineffective assistance of counsel).
Conversely, in Tylitzki, 126 Ill.App.2d 144, 261 N.E.2d 533, the court held that the plaintiff in a negligence action did not affirmatively place her mental condition in issue by including an allegation for pain and suffering in her complaint. The plaintiff's mental well-being was not specifically made an issue by the pleadings; thus, the plaintiff did not waive the statutory patient/psychiatrist privilege. Tylitzki, 126 Ill.App.2d at 149, 261 N.E.2d 533. Similarly, an individual does not put his or her mental health in issue merely by filing a petition for adoption (Bland, 141 Ill.App.3d 818, 96 Ill.Dec. 122, 490 N.E.2d 1327) or by filing a claim for loss of society under the Wrongful Death Act (Ill.Rev.Stat. 1985, ch. 70, pars. 1, 2) (Thiele, 165 Ill.App.3d 983, 117 Ill.Dec. 530, 520 N.E.2d 881). See also D.C., 178 Ill.2d 551, 227 Ill.Dec. 550, 687 N.E.2d 1032 (finding party did not put mental health in issue by pleading freedom from negligence, by denying allegation of comparative negligence, or by filing a negligence claim).
We note that, in the context of HIV-related information, courts should be particularly reluctant to find that a party waived the Act's statutory privilege by putting his or her health in issue. By enacting Public Act 89-381, our legislature clearly intended to make it difficult for an individual to access another individual's HIV-related information through the court system, and a fundamental rule of statutory construction is to give effect to the intent of the legislature (State of Illinois v. Mikusch, 138 Ill.2d 242, 247, 149 Ill.Dec. 704, 562 N.E.2d 168 (1990)). For instance, Public Act 89-381 repealed the exception for court-ordered access in section 9(g) of the Act. In addition, Public Act 89-381 added the following sentence to section 9(d):
"Neither the Department nor its authorized representatives shall disclose information and records held by them relating to known or suspected cases of AIDS or HIV infection, publicly or in any action of any kind in any court or before any tribunal, board, or agency." (Emphasis added.) 410 ILCS 305/9(d) (West 1996).
The legislature similarly amended other statutes with Public Act 89-381. For instance, the following was added to the Illinois Sexually Transmissible Disease Control Act (410 ILCS 325/1 et seq. (1996)):
"The Department and its authorized representatives shall not disclose information *132 and records held by them relating to known or suspected cases of sexually transmissible diseases publicly or in any action of any kind in any court or before any tribunal, board, or agency * * *." (Emphasis added.) 410 ILCS 325/8(a) (West 1996).
Similarly, the legislature added sexually transmitted diseases, the definition of which includes HIV and AIDS, to the confidential information section of the Communicable Disease Report Act (745 ILCS 45/1 (West 1996)), which provides that "[t]he identity of any individual who makes a report or who is identified in a report of * * * [a] sexually transmitted disease * * * shall be confidential and the identity of any person making a report or named therein shall not be disclosed publicly or in any action of any kind in any court or before any tribunal, board or agency" (745 ILCS 45/1 (West 1996)). Therefore, in this case, we will not find that petitioner waived the statutory privilege unless he expressly waived the Act's privilege, which he did not, or he specifically or affirmatively placed his health in issue in the pleadings.

1. Filing Petition for Dissolution
The grounds for dissolution include some grounds relating to a respondent's health. The only ground even close to relevant in this case is the situation where "the respondent has infected the other with a sexually transmitted disease" (750 ILCS 5/401(a)(1) (West 1996)), the definition of which includes HIV and AIDS (77 Ill. Adm. Code § 693.10 (1997)). Nonetheless, petitioner did not put his health in issue by filing the petition for dissolution, although this argument does raise an example where a party's HIV status would be in issue.
Several reasons exist why petitioner did not put his health in issue by filing the petition for dissolution in this case. First, the grounds for dissolution regarding health concern the respondent's health, not the petitioner's health. Second, petitioner's stated ground for dissolution was mental cruelty, not that respondent infected him with a communicable venereal disease. Third, the grounds for dissolution in this case are irrelevant at this stage of the proceedings since the judgment for dissolution was entered before respondent filed her motion to produce. On the other hand, if respondent had filed a petition for dissolution alleging that petitioner had infected her with HIV, petitioner's HIV-related information would have been in issue. Since that is not the case here, petitioner did not waive the Act's privilege by filing the petition for dissolution. See Bland, 141 Ill.App.3d 818, 96 Ill.Dec. 122, 490 N.E.2d 1327; Thiele, 165 Ill.App.3d 983, 117 Ill.Dec. 530, 520 N.E.2d 881.

2. Property Distribution and Maintenance Award
We also disagree that petitioner put his health in issue by seeking an equal distribution of marital assets without maintenance. Respondent correctly notes that in a proceeding for dissolution of marriage the trial court shall divide marital property in just proportions while considering all relevant factors, including the health of each of the parties. 750 ILCS 5/503(d)(8) (West 1996). Likewise, when determining whether to grant maintenance or the amount of a maintenance award, the trial court should consider all relevant factors, including the physical condition of the parties. 750 ILCS 5/504(a)(8) (West 1996).
In neither instance, however, is a party's poor health used against that party. Instead, a party's poor health results in an increased share of the marital assets or an increased maintenance award. For instance, in In re Marriage of Clearman, 97 Ill.App.3d 641, 53 Ill.Dec. 91, 423 N.E.2d 283 (1981), the appellate court reversed and remanded the trial court's award of nearly all of the marital assets to the respondent wife, without debt obligations. The appellate court felt that the extreme disparity in the division of marital property was not justified on the facts then in the record. At the time of the original award the respondent had been in good health, but prior to rehearing upon remand, the respondent encountered serious health problems. As a result, recognizing that the respondent's severely poor health was a critical factor, the appellate court found no abuse of discretion when the trial court, upon remand, substantially reaffirmed the prior *133 judgment favoring the respondent. See also In re Marriage of Orlando, 218 Ill.App.3d 312, 160 Ill.Dec. 763, 577 N.E.2d 1334 (1991) (awarding two thirds of marital property to petitioner wife was not an abuse of discretion since respondent was in good health but petitioner suffered from physical and emotional problems); In re Marriage of Madoch, 212 Ill.App.3d 1007, 157 Ill.Dec. 10, 571 N.E.2d 1029 (1991) (holding trial court abused its discretion in granting petitioner wife only 55% of marital property in light of petitioner's total disability as the result of illness and directing that petitioner's share be increased to 75%); In re Marriage of Agazim, 176 Ill.App.3d 225, 125 Ill.Dec. 701, 530 N.E.2d 1110 (1988) (holding no abuse of discretion in awarding petitioner wife 76% of marital assets since petitioner's wage-earning capacity was limited by injuries); In re Marriage of Brooks, 138 Ill.App.3d 252, 93 Ill.Dec. 166, 486 N.E.2d 267 (1985) (holding trial court did not abuse its discretion by awarding respondent wife slightly more than 50% of marital estate where respondent was a virtual invalid and petitioner was in good health); In re Marriage of Fuggiti, 130 Ill.App.3d 190, 85 Ill.Dec. 658, 474 N.E.2d 386 (1985) (holding trial court did not abuse its discretion in awarding a substantial portion of the marital assets to petitioner wife on remand, since wife suffered from a terminal illness); In re Marriage of McNeeley, 117 Ill.App.3d 320, 72 Ill.Dec. 873, 453 N.E.2d 748 (1983) (holding no abuse of discretion in awarding approximately 60% of marital assets to wife where wife suffered from arthritis and husband was in good health).
Likewise, in Brooks, 138 Ill.App.3d 252, 93 Ill.Dec. 166, 486 N.E.2d 267, the court held that the trial court did not abuse its discretion in awarding a divorced wife $225 per week maintenance where the respondent wife was a virtual invalid and the petitioner husband was in good health. See also In re Marriage of Pearson, 236 Ill.App.3d 337, 177 Ill.Dec. 650, 603 N.E.2d 720 (1992) (holding trial court abused its discretion by ordering 36-month limitation on rehabilitative maintenance, where petitioner wife had medical condition for which she was under doctor's care); In re Marriage of Shields, 167 Ill. App.3d 205, 118 Ill.Dec. 50, 521 N.E.2d 118 (1988) (holding trial court did not abuse its discretion in ordering petitioner wife to pay maintenance to respondent, since respondent suffered a debilitating stroke).
In the present case, petitioner does not seek an increased share of the marital assets or maintenance because of his alleged illness. Petitioner's pleadings do not even raise an alleged illness. In other words, petitioner is not attempting to abuse the Act's privilege by using his alleged ill health as a sword rather than as a shield. The trial court may simply assume petitioner is in good health and needs no extra consideration for ill health. Accordingly, by seeking an equal division of the marital assets without maintenance, respondent's pleadings do not specifically or affirmatively place his health in issue. See Webb, 73 Ill.App.2d 405, 219 N.E.2d 165 (plaintiff's general allegation of pain and suffering as opposed to a specific claim for damages based on plaintiff's mental condition does not put plaintiff's mental health in issue); D.C., 178 Ill.2d 551, 227 Ill.Dec. 550, 687 N.E.2d 1032 (plaintiff did not seek any damages due to mental health injury or any related expenses).
Additionally, we note that, if respondent believes she deserves an increased share of the marital assets or a maintenance award, putting her own health in issue, she can attempt to prove that she is ill. Respondent may rely on her own medical records to carry her burden of proof on this issue.

3. Personal Injury Claim/Pension Valuation
Respondent did not raise in the trial court her arguments regarding her personal injury claim and the parties' pensions. Thus, respondent waived both arguments on appeal. See Bloink v. Olson, 265 Ill.App.3d 711, 716, 202 Ill.Dec. 760, 638 N.E.2d 406 (1994) (issues raised for first time on appeal are waived). In addition, relevancy and difficulty are not determinative of whether petitioner put his physical health in issue; the question is whether petitioner specifically or affirmatively put his physical health in issue. See D.C., 178 Ill.2d at 566, 227 Ill.Dec. 550, 687 N.E.2d 1032.
Furthermore, respondent's analysis regarding her personal injury claim is misplaced. *134 Respondent, citing Agosto v. Trusswal Systems Corp., 142 F.R.D. 118 (E.D.Pa. 1992), contends that the trial court should consider a party's potentially decreased life expectancy in determining a "just proportion" where that party seeks a portion of another party's personal injury claim. In Agosto, however, it was the personal-injury plaintiff who put his HIV-related information in issue by pursuing claims for future pain and suffering and lost earning capacity, thereby necessitating the introduction of life expectancy information regarding average life span. Accordingly, that plaintiff waived his statutory privilege. In this case, however, petitioner is not a personal injury plaintiff pursuing a claim based on life expectancy.

IV. REASONABLE SUSPICION
Finally, we are reluctant to allow respondent to begin a fishing expedition. Prior to filing her motion to produce, respondent had filed a document alleging that the parties were in good health. The basis of respondent's motion was then stated "on information and belief." Even on appeal, respondent refers in her brief to petitioner's "possible testing." It appears that the sole basis for respondent's request is the fact that petitioner allegedly admits he is a homosexual. Although homosexuals are in a high risk group for HIV infection, respondent has not presented even a reasonable suspicion that petitioner has been tested or is infected.
Finally, if respondent truly believes she may have been exposed to HIV, she is free to be tested. Nearly three years have passed since her marriage was dissolved, and modern HIV tests provide adequate assurances within one year.

CONCLUSION
For the foregoing reasons, the judgment of the circuit court of Ogle County is reversed and the cause is remanded.
Reversed and remanded.
DOYLE and THOMAS, JJ., concur.