746 N.E.2d 274 (2001)
319 Ill. App.3d 771
253 Ill.Dec. 826
In re D.H., a Minor, by Samara POWELL, her mother and next friend, Plaintiff-Appellant (John Leighton, Contemptor-Appellant, v. Chicago Housing Authority, Defendant-Appellee.)
No. 1-99-2931.
Appellate Court of Illinois, First District, Fourth Division.
March 1, 2001.
*275 Hegarty & Heath, Chicago (Terrence K. Hegarty, Timothy W. Heath, of counsel), for Appellant.
Chicago Housing Authority, Office of the General Counsel, Chicago (Kathleen S. Wengel, of counsel), for Appellee.
Justice SOUTH delivered the opinion of the court:
On July 3, 1996, plaintiff, D.H., filed a complaint against the Chicago Housing Authority (CHA), alleging that while she resided in a CHA apartment at 3849 S. King Drive, in Chicago, the apartment contained hazardous lead paint that caused her to become lead poisoned. She further alleged that as a result of this lead poisoning she was neurologically damaged. CHA denies these allegations.
During the deposition of plaintiff's mother, Samara Powell (Powell), defense counsel asked several questions pertaining to the educational, medical and social background of both herself and other members of the family. Plaintiff's counsel, John Leighton, objected to this questioning and defense counsel certified the questions so that the court could later determine which questions should be answered by Powell.
On November 6, 1998, defendant filed a motion to compel answers to certified questions. As part of the motion, it requested all medical and educational records of plaintiff's parents and siblings. In support of this motion, defendant attached the affidavit of Ms. Claire Ernhart. In her affidavit, Ms. Ernhart stated that because the effects of lead on neuropsychologic function remain elusive and significant questions remain, she does not believe one can conclude to a scientific certainty that lead has a measurable impact on child development. Therefore, she concluded, that any analysis of an individual child must take into account all of the circumstances of that child's development. In her opinion, the educational and medical records of the parents, siblings, and distant relatives were necessary.
On November 13, 1998, the trial court granted defendant's motion to compel with regards to some of the certified questions, and continued the hearing with regards to defendant's requests for medical and educational records. At the hearing on November 20, the trial court gave defendant leave to subpoena the medical and education records of the parents and siblings and made the subpoenas returnable to her chambers for an in camera inspection to determine relevancy. Plaintiff's counsel was ordered to produce the authorizations necessary to release these records, but he refused to do so. During the hearing, plaintiff's counsel argued that based upon Illinois case law, non-party medical and educational records were privileged. The court disagreed with plaintiff's counsel, found him in contempt and fined him $50.
*276 On December 9, 1998, plaintiff filed a motion to vacate the court's order of November 20th and moved to strike Ms. Ernhart's affidavit on the basis that defendant, as a governmental entity, could not contest the findings and underlying basis of the federal, state and municipal government statutes, regulations and ordinances which prohibit the use of lead paint on the walls of residences because of potential neurological damage to children who ingest that lead paint. In defendant's response, it argued that Illinois did not address the issue presented, which is whether factual data contained in medical records was discoverable. It argued that New York case law should be followed on this issue since New York has case law which reconciles the physician-patient privilege of non-party witnesses with the full disclosure requirement shared by both New York and Illinois practice rules.
Plaintiff's motion to vacate the court's order and to strike Ernhart's affidavit was denied on July 23, 1999. On August 16, 1999, plaintiff filed a timely notice of appeal.
Plaintiff raises two issues on appeal: (1) whether the medical records of non-parties are privileged or subject to a constitutional right to privacy; and (2) whether defendant, as a governmental entity, can rely on the opinion of an expert, which contradicts the public policy of the city, state and federal government.
A contempt proceeding is an appropriate method for testing the correctness of a discovery order, and where an individual appeals a contempt judgment imposed for violating a discovery order, that discovery order is subject to review. Norskog v. Pfiel, 314 Ill.App.3d 877, 881, 247 Ill.Dec. 922, 733 N.E.2d 386, 390 (2000). If the discovery order is invalid, then the contempt order, for failure to comply with that discovery order, must be reversed. In re Marriage of Bonneau, 294 Ill.App.3d 720, 723, 229 Ill.Dec. 187, 691 N.E.2d 123, 127 (1998). A trial court lacks the discretion to compel the disclosure of information that is privileged or otherwise exempted by statute or by common law. Our review of this matter is de novo. Bonneau, 294 Ill.App.3d at 723, 229 Ill.Dec. 187, 691 N.E.2d at 127.
The primary issue is whether the medical and educational records of non-parties are privileged. Plaintiff argues that according to Illinois case law, the medical and educational records of non-parties are privileged and that defendant has tendered no exception to this fundamental principal. Plaintiff further argues that Illinois case law does address the issues raised on appeal, and that contrary to defendant's position, New York case law should not be followed.
Defendant argues that these records are not privileged because it seeks to discover the facts contained in the medical records, not the communications. It agrees with plaintiff that Illinois courts have found a constitutional right to privacy of medical records that memorialize the confidences between a patient and a medical provider. However, it asserts that this right to privacy does not extend to factual data contained in the medical records. Defendant states that since Illinois courts have not rendered any decisions about the discoverability of items that are outside the protected realm of confidences shared with medical providers, consideration of New York case law on this issue is appropriate.
First, we find that the medical records of nonparties are protected by the physician-patient privilege and are not discoverable.
The physician-patient privilege provides in pertinent part:

*277 "Physician and patient. No physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient, except only * * * (2) in actions, civil or criminal, against the physician for malpractice, * * * (4) in all actions brought by or against the patient * * * wherein the patient's physical or mental condition is an issue." (Emphasis added.) 735 ILCS 5/8-802 (West 1992).
In Parkson v. Central DuPage Hospital, 105 Ill.App.3d 850, 61 Ill.Dec. 651, 435 N.E.2d 140 (1982), defendant hospital was held in contempt for failure to comply with the trial court's order to produce discharge summaries of nonparty patients to a medical malpractice action. Defendant appealed. On appeal, plaintiff argued that these records were discoverable because an exception to the physician-patient privilege has been carved out in cases such as this, wherein an action is brought against a physician for malpractice. Parkson, 105 Ill.App.3d at 854, 61 Ill.Dec. 651, 435 N.E.2d at 143. Plaintiff argued that this exception was not limited to the records of the patient who brings the malpractice action but extends to the patients of the physician being sued for malpractice. Parkson, 105 Ill.App.3d at 854, 61 Ill.Dec. 651, 435 N.E.2d at 143.
Disagreeing with plaintiff's position, we held that "that exception should be limited to only allow the disclosure of the records of the patient who is bringing the malpractice action. A broadening of that exception to allow the disclosure of communications involving patients who are not parties to the litigation would neither serve a public interest nor the private interests of those non-party patients." Parkson, 105 Ill.App.3d at 855, 61 Ill.Dec. 651, 435 N.E.2d at 143.
In Ekstrom v. Temple, 197 Ill.App.3d 120, 142 Ill.Dec. 910, 553 N.E.2d 424 (1990), a breast biopsy patient who sustained toxic shock syndrome requiring leg and finger amputations sued the hospital, doctors and medical equipment suppliers. During discovery, the plaintiff requested various documents from the hospital, including the medical records of nonparties. Ekstrom, 197 Ill.App.3d at 123, 142 Ill.Dec. 910, 553 N.E.2d at 425-26. After the hospital refused to produce some of the documents arguing that they were privileged, the plaintiff filed a motion to compel. The trial court issued a contempt order against the hospital and the attorney for failure to produce the documents for an in camera inspection. Ekstrom, 197 Ill.App.3d at 123, 142 Ill.Dec. 910, 553 N.E.2d at 426.
On appeal, we held that the records of the nonparty patients were privileged and thus the trial court's contempt order was improper. Ekstrom, 197 Ill.App.3d at 130, 142 Ill.Dec. 910, 553 N.E.2d at 430. We further noted that merely deleting the patient's names may not sufficiently protect the confidentiality to which the nonparty patients are entitled. Ekstrom, 197 Ill. App.3d at 130, 142 Ill.Dec. 910, 553 N.E.2d at 430.
In House v. SwedishAmerican Hospital, 206 Ill.App.3d 437, 151 Ill.Dec. 467, 564 N.E.2d 922 (1990), a case cited by plaintiff and contemnor in this case, plaintiff filed a complaint alleging that the defendant hospital carelessly and negligently permitted a patient in the hospital to inflict injuries upon her in a hospital lounge in November 1983. During discovery, plaintiff filed a motion to compel documents, including reports concerning the incident in question and "any and all documents or writings relating to the condition of the patient" who allegedly injured plaintiff. House, *278 206 Ill.App.3d at 439, 151 Ill.Dec. 467, 564 N.E.2d at 924. The trial court ordered defendant to produce the documents for an in camera inspection. After the inspection, the court ordered defendant to only produce the patient's hospital records for the November 1983 admission. House, 206 Ill.App.3d at 441, 151 Ill.Dec. 467, 564 N.E.2d at 924.
On appeal, plaintiff argued that the trial court erred in refusing to release all of the patient's medical records. House, 206 Ill. App.3d at 439, 151 Ill.Dec. 467, 564 N.E.2d at 923-24. We held that the patient's medical records were protected by the physician-patient privilege. House, 206 Ill.App.3d at 443, 151 Ill.Dec. 467, 564 N.E.2d at 926. Citing Ekstrom, the court reasoned that the medical records of non-party patients, vis-a-vis a medical malpractice action, were privileged and not subject to disclosure. We further reasoned that this privilege will often act to bar what is clearly relevant and material information, since the privilege pertains to any information which a physician obtains "in attending any patient in a professional character, necessary to enable him or her professionally to serve such patient." House, 206 Ill.App.3d at 446, 151 Ill.Dec. 467, 564 N.E.2d at 928.
We concluded that the nonparty patient's medical records, including the records concerning the November 1983 admission, were protected by the physician-patient privilege and were not subject to discovery. House, 206 Ill.App.3d at 444, 151 Ill.Dec. 467, 564 N.E.2d at 927.
Finally, in Glassman v. St. Joseph Hospital, 259 Ill.App.3d 730, 197 Ill.Dec. 727, 631 N.E.2d 1186 (1994), a special administrator of a patient's estate brought a medical malpractice action against the hospital and surgeons. During discovery, plaintiff requested the partial medical records of any patient who underwent surgery by the same surgeons and who experienced difficulties similar to those of the deceased, with the patient's names redacted. Glassman, 259 Ill.App.3d at 745, 197 Ill.Dec. 727, 631 N.E.2d at 1198. The trial court denied plaintiffs motion to compel these documents based upon the physician-patient privilege. Glassman, 259 Ill.App.3d at 746, 197 Ill.Dec. 727, 631 N.E.2d at 1198.
On appeal, plaintiff argued that this court should overrule Ekstrom and follow cases from other states. We disagreed with plaintiff and held that "Ekstrom correctly interprets the physician-patient privilege in Illinois" as it relates to the medical records of nonparties, and as such, plaintiffs motion to compel the medical records of nonparty patients was properly denied. Glassman, 259 Ill.App.3d at 746, 197 Ill.Dec. 727, 631 N.E.2d at 1198.
We find, contrary to defendant's position, that Illinois law does sufficiently address the issue of whether the information contained in the medical records of nonparties is protected by the physician-patient privilege. The case law is perfectly clear that medical records of nonparties are privileged, and that there is no distinction between the communications and the facts contained therein.
Defendant asserts that since Illinois law has no cases that directly address whether the facts in the medical records are privileged, we should look to New York law for guidance since its statute on the physician-patient privilege is analogous to our own. Defendant argues that the New York court of appeals case of Williams v. Roosevelt Hospital, 66 N.Y.2d 391, 497 N.Y.S.2d 348, 488 N.E.2d 94 (1985), should be followed on this issue.
Although we are not compelled to follow the laws of other states when Illinois law provides adequate precedent, we will take *279 a cursory look at our sister state's case law on this issue.
In Williams, a medical malpractice action was brought by an infant and his father alleging that the infant suffered brain damage as a result of negligent obstetrical care. Williams, 66 N.Y.2d at 393, 497 N.Y.S.2d 348, 488 N.E.2d at 95. During the deposition testimony of plaintiff's mother, a nonparty, defense counsel asked her several questions about the health and birth of her other children. Williams, 66 N.Y.2d at 394-95, 497 N.Y.S.2d 348, 488 N.E.2d at 95-96. Plaintiff's attorney objected to this line of questioning. Defendant requested that the lower court order the mother to appear for further examination to answer these questions, but the court denied the request. Williams, 66 N.Y.2d at 395, 497 N.Y.S.2d 348, 488 N.E.2d at 96. The appellate division reversed and granted the examination. It reasoned that "there is no [physician-patient] privilege in testimony as to what actually happened. The privilege applies to confidential information given to the physician which enables him to act in his professional capacity." (Emphasis added.) Williams, 66 N.Y.2d at 395, 497 N.Y.S.2d 348, 488 N.E.2d at 96.
The New York court of appeals affirmed the ruling of the appellate division. It reasoned that although the infant's mother, as a nonparty witness, may invoke the physician-patient privilege to avoid revealing the substance of confidential communications made to her physician, she may not refuse to answer questions regarding matters of fact, such as whether she was in the care of a physician or was taking medication during a certain period of time or the facts surrounding an abortion. Similarly, she may not refuse to answer factual questions concerning whether she had any physical or congenital problems. Williams, 66 N.Y.2d at 397, 497 N.Y.S.2d 348, 488 N.E.2d at 97.
Williams, however, is distinguishable from the case at bar. The Williams court addressed the physician-patient privilege in the context of the testimony of a nonparty witness, not whether the nonparty's medical record itself was discoverable. Williams involved the question of whether a nonparty mother in a medical malpractice action for her infant son may refuse to testify as to relevant facts concerning her prior medical history and the birth and physical condition of her two eldest children. It did not address the issue in the case at bar, which is whether factual data contained in the medical records of nonparty mother was privileged.
In Wepy v. Shen, 175 A.D.2d 124, 571 N.Y.S.2d 817 (1991), a case factually similar to the case at bar, the second department did address this issue. In Wepy, defendant hospital appealed from a lower court decision, denying its request for discovery of the medical and school records of the siblings of the infant plaintiff that it argued was critical to its defense. Wepy, 175 A.D.2d at 124, 571 N.Y.S.2d at 818. The second department opined that the information revealed by the plaintiff's parents during the course of their depositions constituted mere facts and incidents of the medical history of the plaintiff's siblings and, thus, was not privileged. Wepy, 175 A.D.2d at 125, 571 N.Y.S.2d at 818.
However, the court held that the parents did not waive the physician-patient privilege as to the medical records themselves; thus, the defendant was not entitled to those records. Wepy, 175 A.D.2d at 125, 571 N.Y.S.2d at 818.
Similar to the case at bar, the affidavit of an expert was submitted in Wepy in support of defendant's position. The expert testified that there was a possible connection between plaintiff's neurological *280 problems and the problems of her siblings which would support the defense that plaintiff's injuries were due to genetic causes. Wepy, 175 A.D.2d at 125, 571 N.Y.S.2d at 818. The court concluded that based upon the expert's affidavit plaintiff's siblings' school records were relevant and discoverable. They did not come to the same conclusion, however, with regards to the nonparty siblings' medical records. Wepy, 175 A.D.2d at 125, 571 N.Y.S.2d at 818.
In several other appellate division cases, New York court's also held that the medical records of nonparties were privileged.
In In re New York County DES Litigation, 168 A.D.2d 44, 570 N.Y.S.2d 804 (1991), manufacturers of a drug, diethylstilbestrol, were sued by plaintiffs for birth defects allegedly caused due to their mothers' ingestion of the drug during pregnancy. During discovery, the manufacturer sought authorizations to obtain the medical records of the plaintiffs' mothers, fathers, siblings and other family members, in order to show that the cause of these birth defects was due to other factors, independent of the ingestion of diethylstilbestrol. New York County DES Litigation, 168 A.D.2d 44, 570 N.Y.S.2d 804. The first department held that only the medical records of the mothers during the gestation period were discoverable. However, the mothers' other medical records were protected by the physician-patient privilege. As to the other relatives, the court reasoned that "[t]he mere fact that a relative, distant or near in terms of kinship, has commenced a medical malpractice action alleging a birth defect should not subject all her relatives to the `long arm' reach of the law authorizing medical records opened to all." New York County DES Litigation, 168 A.D.2d at 47, 570 N.Y.S.2d at 805. Therefore, the medical records of these nonparty family members were privileged, and not discoverable.
In Monica v. Milevoi, 252 A.D.2d 260, 685 N.Y.S.2d 231 (1999), plaintiff brought a cause of action, on behalf of herself and her twin daughters, against her landlord alleging that her daughters had been lead poisoned. During discovery, the defendant asked over 103 questions concerning the nonparty siblings of the twins, which plaintiff was directed not to answer. Monica, 252 A.D.2d at 261, 685 N.Y.S.2d at 232. Defendants requested that the court require plaintiff to answer these questions, which was denied. Monica, 252 A.D.2d at 262, 685 N.Y.S.2d at 233.
On appeal, the first department held that although generally these facts are discoverable, the relevancy of the information must first be established, which had not been done. Most importantly, however, the court reasoned that the release of the confidential information concerning the medical and educational background of the nonparties "cannot be defeated by defendants' assertion that it is material and necessary to their defense." Monica, 252 A.D.2d at 262-63, 685 N.Y.S.2d at 233. The court reasoned:
"Defendants' intimation that genetic and other environmental factors may have contributed to the infant plaintiffs' impairment is speculative, at best, and does not serve to introduce the issue into the case. That a sibling suffers from a cognitive deficit demonstrates nothing unless the possibility that the sibling was also exposed to lead can be ruled out as a factor contributing to the condition. This would require exploration into the sibling's medical history which, absent waiver by plaintiff mother, is foreclosed. Finally, even assuming defendants could establish, by utilizing unprivileged material, that a mentally impaired sibling was not exposed to *281 lead, defendants would still have to establish that any such impairment was not the result of genetic variation or some eternal factor having no bearing on the infant plaintiffs' condition." Monica, 252 A.D.2d at 263, 263-64, 685 N.Y.S.2d at 234.
As such, New York law is in accordance with Illinois law on the issue of whether the medical records of nonparties are protected by the physician-patient privilege with regard to both the facts and communications contained therein.
The next issue is whether the educational records of nonparties are protected by any privilege.
Under the Illinois School Student Records Act (Act) (105 ILCS 10/1 et seq. (West 1998)), access to school student records is limited, and unless a party qualifies for their release under one of several statutory exceptions, access will be denied.
Section 6 of the Act states in pertinent part:
"(a) No school student records or information contained therein may be released, transferred, disclosed or otherwise disseminated, except as follows:
* * *
(5) Pursuant to a court order, provided that the parent shall be given prompt written notice upon receipt of such order of the terms of the order, the nature and substance of the information proposed to be released in compliance with such order and an opportunity to inspect and copy the school student records and to challenge their contents* * *." 105 ILCS 10/6(a)(5) (West 1998).
In this case, the trial court issued an order calling for the release of the nonparty siblings' school student records. The order provided that the records would be delivered to the court for an in camera inspection to determine their relevancy. Therefore, under the Act, the release of these records is authorized.
Based upon the foregoing, the trial court's order of November 20, 1998, is affirmed in part, reversed part and remanded. We further find that since it is proper procedure to test the validity of a contempt order on appeal, and since contemnor acted in good faith to secure an interpretation of the privileges in question, the trial court's order of contempt and the fine of $50 is vacated. See Reda v. Advocate Health Care, 316 Ill.App.3d 1115, 250 Ill.Dec. 189, 738 N.E.2d 153 (2000) (contemnor subjecting herself to a contempt finding for purposes of testing the validity of the court order was an appropriate method to secure an interpretation in good faith and not contemptuous of the court).
Affirmed in part, reversed in part, vacated in part and remanded.
HOFFMAN and BARTH, JJ., concur.