No. 2--06--0019                         filed: 11/21/06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| DAWN DEFILIPPIS and FRANK DEFILIPPIS, | ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | No. 04--L--15 |
| | ) | |
| WILLIAM GARDNER and WESTMORELAND OB/GYNE ASSOCIATES, INC., | ) ) ) | Honorable |
| | ) | Henry C. Tonigan III, |
| Defendants-Appellants. | ) | Judge, Presiding. |

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

The plaintiffs, Dawn and Frank Defilippis, sued the defendants, William Gardner, M.D., and Westmoreland OB/Gyne Associates, Inc., for damages sustained by Dawn as a result of negligent medical treatment. During the course of discovery, the trial court ordered the defendants to produce the names and addresses of 20 nonparty patients upon whom Gardner had performed a certain medical procedure. The defendants refused, claiming that the information fell within the physician-patient privilege (735 ILCS 5/8--802 (West 2004)). Upon the defendants' request, the trial court held the defendants in contempt of court and imposed a $25 fine. Following the denial of their motion to reconsider, the defendants timely appealed. The issue on appeal is whether the physician-patient

privilege protects the names and addresses of nonparty patients who underwent a particular medical procedure performed by a defendant doctor. We hold that it does.

BACKGROUND

On January 7, 2004, the plaintiffs filed a two-count complaint against the defendants, alleging a medical malpractice claim and a cause of action for loss of consortium. According to the complaint, Dawn went to Gardner, a doctor with specialized training and experience in obstetrics and gynecology, for help with urinary stress incontinence. Gardner recommended that Dawn undergo a retropubic Burch colposuspension procedure ("Burch procedure" or "procedure") to remedy her problem. The plaintiffs alleged that Gardner failed to advise Dawn of alternative options, failed to advise Dawn of potential risks associated with the procedure, failed to advise Dawn of his limited experience in performing the procedure, failed to evaluate Dawn for urinary incontinence prior to the procedure, failed to employ urodynamics, and discharged Dawn with emesis.

On April 20, 2005, Gardner testified at his deposition that he met with Dawn on April 19, 1999, and evaluated her for urinary incontinence. Gardner took a history from Dawn and performed a physical examination. After examining Dawn, Gardner discussed possible treatments with her, including the Burch procedure. Gardner did not take notes during his examination of Dawn and did not document his conversation with her. However, he was certain that the examination and discussion had occurred because "every patient that I do a Birch [sic] procedure on, I go through the scenario that you just described of, the history and the physical and discussing the procedure and risks thereafter." According to Gardner, he had performed approximately 20 Burch procedures prior to performing the procedure on Dawn.

On April 29, 2005, following Gardner's deposition, the plaintiffs sent the defendants a second set of interrogatories under Supreme Court Rule 213 (Official Reports Advance Sheet No. 8 (April 17, 2002), R. 213, eff. July 1, 2002), including the following question:

"1. With regard to the 20 individuals upon whom Dr. Gardner has testified at his deposition that he has performed a Birch [sic] procedure prior to the one performed on the Plaintiff, Dawn DeFilippis on May 12, 1999, identify:

a. The name, address, and last known phone number of that individual;

b. When and where Dr. Gardner performed the Birch [sic] procedure on this individual;

c. The reason why Dr. Gardner performed this procedure on the individual;

d. The identity of all persons who have knowledge regarding Dr. Gardner performing the Birch [sic] procedure on this individual;

e. All medical records in the Defendants' possession with regard to the Birch [sic] procedure performed by Dr. Gardner on this individual."

The plaintiffs also sent a second request to produce under Supreme Court Rule 214 (166 Ill. 2d R. 214), seeking "[a]ll medical records in the possession of the Defendants for each individual whom Dr. Gardner performed a Birch [sic] procedure prior to the one performed on Dawn Defilippis on May 12, 1999."

On July 6, 2005, the defendants objected to the discovery requests, based on the physician-patient privilege. On August 2, 2005, the plaintiffs moved to compel the defendants to comply with their second set of interrogatories and document requests. The plaintiffs argued that the defendants had waived their objections because their response was untimely filed.

After a hearing, on September 13, 2005, the trial court granted the plaintiffs' motion to compel but stayed production, based on the defendants' oral motion to be held in contempt of court. The trial court found the defendants in contempt of court and fined them $25.

The defendants moved for reconsideration. At the hearing on the motion, the plaintiffs offered to limit their request to the names and addresses of the patients upon whom Gardner performed a Burch procedure and the "CPT" codes for the procedure. The trial court denied the defendants' motion to reconsider. The trial court ordered the defendants to produce the names and addresses but again stayed production, found the defendants in contempt, and fined them $25. The defendants timely appealed under Supreme Court Rule 304(b)(5) (155 Ill. 2d R. 304(b)(5)).

ANALYSIS

The defendants argue that the trial court erred in ordering them to disclose the names and addresses of the 20 patients upon whom Gardner performed a Burch procedure, because such disclosure violates the physician-patient privilege. In response, the plaintiffs argue that the defendants have waived their right to object to the discovery requests, because they did not timely respond under Rule 213 (Official Reports Advance Sheet No. 8 (April 17, 2002), R. 213, eff. July 1, 2002) and Rule 214 (166 Ill. 2d R. 214). Notwithstanding waiver, the plaintiffs argue that production of the names and addresses does not violate the physician-patient privilege because the information could be obtained from the defendants' accounting records, obtaining the information would not require that the parties delve into the patients' medical records, and the information would not identify the patients' medical conditions. For the following reasons, we agree with the defendants and hold that the information is privileged.

As an initial matter, we reject the plaintiffs' argument that the defendants waived their right to object to the discovery requests by failing to timely respond. The plaintiffs have not cited any decision holding that the trial court may not allow discovery responses or objections beyond the deadlines in the rules. The federal decision the plaintiffs cite, Hobley v. Burge, No. 03--C--3678 (N.D. Ill. Oct 15, 2003), interprets federal discovery rules and bears no relevance to the present case. Furthermore, the plaintiffs have failed to cite any case that holds that a doctor has the power to waive a patient's right to confidentiality. The privilege is for the patient's benefit, not the physician's. People v. Bickham, 89 Ill. 2d 1, 6 (1982). Accordingly, we reject the plaintiffs' claim that the defendants' untimely objection to the plaintiffs' discovery requests results in waiver of their objection.

We now address the propriety of the discovery order. When an individual appeals a finding of contempt arising from noncompliance with a discovery order, we must necessarily review the propriety of the discovery order. In re Marriage of Bonneau, 294 Ill. App. 3d 720, 723 (1998). If the discovery order is improper, the finding of contempt must be reversed. Bonneau, 294 Ill. App. 3d at 723. Generally, discovery rulings are reviewed for abuse of discretion, but the applicability of a privilege is reviewed de novo. Sterling Finance Management, L.P. v. UBS PaineWebber, Inc., 336 Ill. App. 3d 442, 446 (2002).

The physician-patient privilege is codified in section 8--802 of the Code of Civil Procedure, which provides that "[n]o physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient." 735 ILCS 5/8--802 (West 2004). "Illinois law is clear that

the medical records of nonparties are protected by the privilege." Reagan v. Searcy, 323 Ill. App. 3d 393, 398 (2001).

Relying on this court's decision in House v. SwedishAmerican Hospital, 206 Ill. App. 3d 437 (1990), the trial court held that "a mere disclosure of the patient's name doesn't violate that privilege in these types of situations." In House, the plaintiff was attacked by a patient in a hospital lounge and sued the hospital for negligence. House, 206 Ill. App. 3d at 439. During the course of discovery, the plaintiff sought disclosure of the medical records of the patient who had attacked her. This court found that while the patient's medical records were protected by the physician-patient privilege, her name was not. We stated: "[The] plaintiff was entitled to know the identity of the patient who allegedly attacked her and may contact and depose the patient if the plaintiff so desires. Simply revealing the patient's identity, in and of itself, will not result in the disclosure of confidential communications. It is evident that disclosure of the patient's name does not violate the physician-patient privilege." House, 206 Ill. App. 3d at 445.

House does not support the trial court's ruling in this case. Here, we are dealing with more than the "mere disclosure of the patient's name." See House, 206 Ill. App. 3d at 439. The information that the plaintiffs seek is directly related to the nonparty patients' medical conditions. The plaintiffs seek the names of the patients who underwent a Burch procedure. The obvious inference would be that the named patients suffered from urinary incontinence. Thus, if the defendants were to disclose the names of these patients, they would also disclose information "necessary to enable [them] professionally to serve the patient," i.e., the diagnosis of urinary incontinence as well as the medical treatment the patients received. 735 ILCS 5/8--802 (West 2004). Such a disclosure is in clear contravention of the physician-patient privilege.

Accordingly, we hold that the trial court erred in ordering the defendants to disclose the names and addresses of the 20 individuals upon whom Gardner performed the Burch procedure. Because we reverse the order compelling disclosure, we also reverse the finding of contempt. See Parkson v. Central DuPage Hospital, 105 Ill. App. 3d 850, 856 (1982).

As a final matter, the defendants also ask that we address the issue of whether the trial court may bar Gardner from testifying to his custom and practice if he is not required to produce the names and addresses of prior patients. The plaintiffs have filed a motion to strike this issue, arguing that we are without jurisdiction to consider it. We agree with the plaintiffs.

At the hearing on the motion to compel, the trial judge stated: "I know at one time I discussed--you know--the issue of the possibility of the doctor's testimony in terms of his custom and practice might not be admissible without laying a proper foundation." He further stated, "Looking at the case law on that matter, I think he's going to be able to testify to that without much of a foundation to go into any specific records or the like."

Initially, we note that it is unclear whether the trial court even made a "ruling" on the issue. In any event, the defendants' appeal was brought under Rule 304(b)(5), which allows for the appeal from "[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty." 155 Ill. 2d R. 304(b)(5). As such, we are limited to reviewing the finding of contempt and the underlying order. Thus, we grant the plaintiffs' motion to strike.

CONCLUSION

Based on the foregoing, we reverse the orders of the circuit court of Lake County compelling the defendants to disclose the names and addresses of the 20 individuals upon whom Gardner

performed a Burch procedure and holding the defendants in contempt for their failure to do so. We remand the cause.

Reversed and remanded.

GROMETER, P.J., and KAPALA, J., concur.